UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 00-6211CR-HURLEY

UNITED STATES OF AMERICA,
        Plaintiff,

v.

MUTASEM AL-SALHI,
        Defendant.
_____/

**NIGHT BOX**
**FILED**

**JAN 1 7 2001**

**CLERK, USDC / SDFL / WPB**

## DEFENDANT MUTASEM AL-SALHI'S MOTION TO DISMISS

COMES NOW the Defendant, MUTASEM AL-SALHI, by and through his undersigned counsel and moves this Honorable Court pursuant to the double jeopardy clause of the Fifth Amendment to the United States Constitution, to dismiss the instant indictment. In support thereof, the Defendant, MUTASEM AL-SALHI, would show:

1. That the Government's case as to Defendant, MUTASEM ALSAHI, is based on the identical offenses set out in a separate indictment in the United States Middle District of Florida, Case No. 6:00CR-136-ORL-31B that the Defendant, MUTASEM AL-SALHI and the Government entered into a plea agreement in exchange for pleading "guilty". See attached exhibits of the indictment returned by the Grand Jury in the Middle District of Florida accompanied by the Government's Plea Agreement.

2. That, as to Count 1, the Office of the United States
   Attorney for the Southern District of Florida alleges in
   the indictment of the case at hand, in pertinent part,
   that the Defendant, MUTASEM AL-SALHI and the other
   thirteen named co-defendants, from on or about September
   1999, to the present, in Broward County, in the Southern
   District of Florida, and elsewhere, conspired to posses
   and distribute pseudoephedrine, a list I chemical as
   defined in Title 21, United States Code, Section 802,
   knowing and having reasonable cause to believe the
   listed chemical would be used to manufacture a
   controlled substance, that is, methamphetamine, a
   Schedule II controlled substance, in violation of Title
   21, United States Code, Section 846. Compare Count 1 in
   the instant indictment with Count Two as charged by the
   Government in the Middle District of Florida, Case No.
   6:00-CR-136-Orl.31B.

3. That, as to Count 2, the Office of the United States
   Attorney for the Southern District of Florida alleges,
   in pertinent part, that on or about March 27, 2000, at
   Broward County, in the Southern District of Florida, and
   elsewhere, the Defendant, MUTASEM Al-SALHI and four of
   the other named co-defendants, knowingly and
   intentionally possess and distribute pseudoephedrine, a

list I Chemical as defined in Title 21, United States
Code, Section 802, knowing and having reasonable cause
to believe that the listed chemical would be used to
manufacture a controlled substance, that is,
methamphetamine, a schedule II controlled substance, in
violation of Title 21, United States Code, Section
841(d)(2), and Title 18 United States Code, Section 2.
Compare with COUNT ELEVEN, as charged by the Government
in the Middle District of Florida.

4. That, as to Count 3, the Office of the United States
Attorney for the Southern District of Florida alleges,
in pertinent part, that on or about April 4, 2000, at
Broward County, in the Southern District of Florida, and
elsewhere, the Defendant, MUTASEM AL-SALHI and the other
three named co-defendants did knowingly and
intentionally possess and distribute pseudoephedrine, a
list I chemical as defined in Title 21, United States
Code, Section 802, knowing and having reasonable cause
to believe that the listed chemical would be used to
manufacture methamphetamine, a Schedule II control
substance, in violation of Title 21, United States Code,
Section 841(d)(2), and Title 18 United States Code,
Section 2. Compare with COUNT TWELVE, as charged by the
Government in the Middle District of Florida.

5. That, in light of the outstanding Plea Agreement in the United States Middle District of Florida between the Government and the Defendant, MUTASEM AL-SALHI, with respect to the offenses that he pleaded guilty to, **it was at that point jeopardy attached when the United States District Court for the Middle District of Florida unconditionally accepted the guilty plea**. See <u>United States v. Baggett</u>, 901 F.2d 1546, 1548 (11th Cir. 1990); and <u>Blackledge v. Perry</u>, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628.

6. That the Double Jeopardy Clause of the Fifth amendment to the United States Constitution provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V.

Wherefore, the Defendant, MUTASEM AL-SALHI, most respectfully requests this Honorable Court to dismiss the instant indictment.

Respectfully submitted,

Mark E. NeJame, Esquire
Law Offices of
Mark E. NeJame, P.A.
One S. Orange Ave., Ste. 304
Orlando, FL 32801
(407) 245-1232
Fla. Bar No. 310931

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to the Office of the United States Attorney, 299 E. Broward Blvd., Ft. Lauderdale, FL 33301, this the 17th day of January, 2001.

Mark E. NeJame, Esquire

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

UNITED STATES OF AMERICA

v.

NO. 6:00-CR - 136.ORL.31B

21 U.S.C. § 846
21 U.S.C. § 841(d)(2)
21 U.S.C. § 853 - Forfeiture

(1) MOHAMMED AWNI HABBAS
    a/k/a "Habbas"
    a/k/a "Mike"
(2) TAREK ZAKI ABU-LAWI
(3) MUTASEM ALSALHI
    a/k/a "Maldini"
(4) HESHAM KHALED NABUT
(5) JIHAD MOHOMMED SALEM
    a/k/a Joe Salem
(6) KHALID SULIMAN ABU-LAWI
(7) MUSTAFA ABU-LAWI
(8) GAREEB KHALIL SALEM
(9) SABIH SALEH HACK
    a/k/a "Sheik"
    a/k/a "Angel"
(10) MOHAMMED ABED-UL-RAHMAN AWAWDEH
    a/k/a Mohammed Awawdeh
(11) ISSA A. AYESH
(12) LAHCEN OUHARDA
    a/k/a Lahcen Mike Ouharda
    a/k/a "Hasan"
(13) NABIL ABDEL-RAOO MASWADEH
    a/k/a Nabil Maswadeh
    a/k/a "Hythem"
(14) AYDAR M. SAFIN
    a/k/a Jim Edwards
(15) MOHAMMAD TAHA
(16) ZIAD IBRIHIM NOBANI
    a/k/a "Mike"
    a/k/a Ziad Alnobani
(17) KHALED AL-HABAHBIH
(18) RICKY DEAN OSBAN
    a/k/a "Rick"
(19) CARLOS LNU
(20) SAMUEL M. EID
    a/k/a "Sammy"
    a/k/a Said Eid
(21) GABRIEL LNU
    a/k/a "Chago"

(22) PATRICIA JOSEFINA VALENCIA-HERNANDEZ
    a/k/a "Tricia"
(23) JOSE GAUDALUPE TRUJILLO-CARDENAS
    a/k/a "Lupillo"
(24) NAPOLEON REYES-GUZMAN
    a/k/a Jesus C. Sanchez
    a/k/a Juan C. Sanchez

## INDICTMENT

The Grand Jury charges:

### COUNT ONE    *CONSPIRACY methamphetamin*

Beginning in or about April 1999, and continuing through July 29, 2000, in Orange

and Osceola Counties, Florida, in the Middle District of Florida;  in San Jose and Los

Angeles, California; in Portland, Oregon; in Chicago, Illinois; in Houston, Texas; and

elsewhere,

MOHAMMED AWNI HABBAS
a/k/a "Habbas"
a/k/a "Mike"
TAREK ZAKI ABU-LAWI
MUTASEM ALSALHI
a/k/a "Maldini"
HESHAM KHALED NABUT
JIHAD MOHOMMED SALEM
a/k/a Joe Salem
KHALID SULIMAN ABU-LAWI
MUSTAFA ABU-LAWI
GAREEB KHALIL SALEM
SABIH SALEH HACK
a/k/a "Sheik"
a/k/a "Angel"
MOHAMMED ABED-UL-RAHMAN AWAWDEH
a/k/a Mohammed Awawdeh
ISSA A. AYESH
LAHCEN OUHARDA
a/k/a Lahcen Mike Ouharda
a/k/a "Hasan"

2

NABIL ABDEL-RAOO MASWADEH
a/k/a Nabil Maswadeh
a/k/a "Hythem"
AYDAR M. SAFIN
a/k/a Jim Edwards
MOHAMMAD TAHA
ZIAD IBRIHIM NOBANI
a/k/a "Mike"
a/k/a Ziad Alnobani
KHALED AL-HABAHBIH
RICKY DEAN OSBAN
a/k/a "Rick"
CARLOS LNU
SAMUEL M. EID
a/k/a "Sammy"
a/k/a Said Eid
GABRIEL LNU
a/k/a "Chago"
PATRICIA JOSEFINA VALENCIA-HERNANDEZ
a/k/a "Tricia"
JOSE GAUDALUPE TRUJILLO-CARDENAS
a/k/a "Lupillo"
and
NAPOLEON REYES-GUZMAN
a/k/a Jesus C. Sanchez
a/k/a Juan C. Sanchez

the defendants herein, did knowingly, intentionally and willfully combine, conspire, confederate and agree with each other and with other individuals, both known and unknown to the Grand Jury, to possess with the intent to distribute in excess of 50 grams of a quantity of a mixture and substance containing a detectable amount of methamphetamine, a controlled substance listed in Schedule I of Title 21, United States Code, Section 812, in violation of Title 21, United States Code, Section 841(a)(1).

All in violation of Title 21, United States Code, Section 846.

3

<u>COUNT TWO</u>     *Conspiracy Pseudoephedrine*

Beginning in or about April 1999, and continuing through July 29, 2000, in Orange and Osceola Counties, Florida, in the Middle District of Florida; in San Jose and Los Angeles, California; in Portland, Oregon; in Chicago, Illinois; in Houston, Texas; and elsewhere,

MOHAMMED AWNI HABBAS
a/k/a "Habbas"
a/k/a "Mike"
TAREK ZAKI ABU-LAWI
MUTASEM ALSALHI
a/k/a "Maldini"
HESHAM KHALED NABUT
JIHAD MOHOMMED SALEM
a/k/a Joe Salem
KHALID SULIMAN ABU-LAWI
MUSTAFA ABU-LAWI
GAREEB KHALIL SALEM
SABIH SALEH HACK
a/k/a "Sheik"
a/k/a "Angel"
MOHAMMED ABED-UL-RAHMAN AWAWDEH
a/k/a Mohammed Awawdeh
ISSA A. AYESH
LAHCEN OUHARDA
a/k/a Lahcen Mike Ouharda
a/k/a "Hasan"
NABIL ABDEL-RAOO MASWADEH
a/k/a Nabil Maswadeh
a/k/a "Hythem"
AYDAR M. SAFIN
a/k/a Jim Edwards
MOHAMMAD TAHA
ZIAD IBRIHIM NOBANI
a/k/a "Mike"
a/k/a Ziad Alnobani
KHALED AL-HABAHBIH
RICKY DEAN OSBAN
a/k/a "Rick"
CARLOS LNU

4

**SAMUEL M. EID**
**a/k/a "Sammy"**
**a/k/a Said Eid**
**GABRIEL LNU**
**a/k/a "Chago"**
**PATRICIA JOSEFINA VALENCIA-HERNANDEZ**
**a/k/a "Tricia"**
**JOSE GAUDALUPE TRUJILLO-CARDENAS**
**a/k/a "Lupillo"**
**and**
**NAPOLEON REYES-GUZMAN**
**a/k/a Jesus C. Sanchez**
**a/k/a Juan C. Sanchez**

the defendants herein, did knowingly, intentionally and willfully combine, conspire, confederate and agree with each other and with other individuals, both known and unknown to the Grand Jury, to possess and distribute a quantity of pseudoephedrine, a listed chemical, knowing or having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, in violation of Title 21, United States Code, Section 841(d)(2).

All in violation of Title 21, United States Code, Section 846.

## COUNT THREE

On or about July 26, 1999, in Osceola County, Florida, in the Middle District of Florida,

**ZIAD IBRIHIM NOBANI**
**a/k/a "Mike"**
**a/k/a Ziad Alnobani**

the defendant herein, did knowingly and intentionally possess a quantity of pseudoephedrine, a listed chemical, knowing or having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, in violation of

5

Title 21, United States Code, Section 841(d)(2), and Title 18, United States Code, Section 2.

All in violation of Title 21, United States Code, Section 841(d)(2).

## COUNT FOUR

On or about September 27, 1999, in Osceola County, Florida, in the Middle District of Florida,

### ZIAD IBRIHIM NOBANI
### a/k/a "Mike"
### a/k/a Ziad Alnobani

the defendant herein, did knowingly and intentionally possess a quantity of pseudoephedrine, a listed chemical, knowing or having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, in violation of Title 21, United States Code, Section 841(d)(2), and Title 18, United States Code, Section 2.

All in violation of Title 21, United States Code, Section 841(d)(2).

## COUNT FIVE

On or about October 27, 1999, in Osceola County, Florida, in the Middle District of Florida,

### ZIAD IBRIHIM NOBANI
### a/k/a "Mike"
### a/k/a Ziad Alnobani

the defendant herein, did knowingly and intentionally possess a quantity of pseudoephedrine, a listed chemical, knowing or having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, in violation of

6

Title 21, United States Code, Section 841(d)(2), and Title 18, United States Code, Section 2.

All in violation of Title 21, United States Code, Section 841(d)(2).

### COUNT SIX

On or about December 13, 1999, in Osceola County, Florida, in the Middle District of Florida, and elsewhere,

**MOHAMMED AWNI HABBAS**
**a/k/a "Habbas"**
**a/k/a "Mike"**
**and**
**HESHAM KHALED NABUT**

the defendants herein, did knowingly and intentionally distribute a quantity of pseudoephedrine, a listed chemical, knowing or having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, in violation of Title 21, United States Code, Section 841(d)(2), and Title 18, United States Code, Section 2.

All in violation of Title 21, United States Code, Section 841(d)(2).

### COUNT SEVEN

On or about January 13, 2000, in Osceola and Orange Counties, Florida, in the Middle District of Florida,

**MOHAMMED AWNI HABBAS**
**a/k/a "Habbas"**
**a/k/a "Mike"**
**HESHAM KHALED NABUT**
**and**
**SABIH SALEH HACK**
**a/k/a "Sheik"**
**a/k/a "Angel"**

the defendants herein, did knowingly and intentionally distribute a quantity of pseudoephedrine, a listed chemical, knowing or having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, in violation of Title 21, United States Code, Section 841(d)(2), and Title 18, United States Code, Section 2.

All in violation of Title 21, United States Code, Section 841(d)(2).

## COUNT EIGHT

On or about March 20, 2000, in Orange County, Florida, in the Middle District of Florida,

**NABIL ABDEL-RAOO MASWADEH**
**a/k/a Nabil Maswadeh**
**a/k/a "Hythem"**
**and**
**AYDAR M. SAFIN**
**a/k/a Jim Edwards**

the defendants herein, did knowingly and intentionally possess a quantity of pseudoephedrine, a listed chemical, knowing or having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, in violation of Title 21, United States Code, Section 841(d)(2), and Title 18, United States Code, Section 2.

All in violation of Title 21, United States Code, Section 841(d)(2).

## COUNT NINE

On or about March 22, 2000, in Orange County, Florida, in the Middle District of Florida,

**KHALID SULIMAN ABU-LAWI**

**NABIL ABDEL-RAOO MASWADEH**
**a/k/a Nabil Maswadeh**
**a/k/a "Hythem"**
**and**
**AYDAR M. SAFIN**
**a/k/a Jim Edwards**

the defendants herein, did knowingly and intentionally possess a quantity of pseudoephedrine, a listed chemical, knowing or having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, in violation of Title 21, United States Code, Section 841(d)(2), and Title 18, United States Code, Section 2.

All in violation of Title 21, United States Code, Section 841(d)(2).

## COUNT TEN

On or about March 27, 2000, in Orange County, Florida, in the Middle District of Florida,

**TAREK ZAKI ABU-LAWI**
**and**
**MOHAMMED ABED-UL-RAHMAN AWAWDEH**
**a/k/a Mohammed Awawdeh**

the defendants herein, did knowingly and intentionally distribute a quantity of pseudoephedrine, a listed chemical, knowing or having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, in violation of Title 21, United States Code, Section 841(d)(2), and Title 18, United States Code, Section 2.

All in violation of Title 21, United States Code, Section 841(d)(2).

## COUNT ELEVEN

On or about March 28, 2000, in Orange County, Florida, in the Middle District of

Florida,

**TAREK ZAKI ABU-LAWI**
**and**
**MUTASEM ALSALHI**
**a/k/a "Maldini"**

*[handwritten: intent to use pseudo to manufacture a controlled substance]*

the defendants herein, did knowingly and intentionally distribute a quantity of

pseudoephedrine, a listed chemical, knowing or having reasonable cause to believe that

the listed chemical would be used to manufacture a controlled substance, in violation of

Title 21, United States Code, Section 841(d)(2), and Title 18, United States Code, Section

2.

All in violation of Title 21, United States Code, Section 841(d)(2).

## COUNT TWELVE

On or about April 5, 2000, in Orange County, Florida, in the Middle District of Florida,

**MUTASEM ALSALHI**
**a/k/a "Maldini"**

the defendant herein, did knowingly and intentionally distribute a quantity of

pseudoephedrine, a listed chemical, knowing or having reasonable cause to believe that

the listed chemical would be used to manufacture a controlled substance, in violation of

Title 21, United States Code, Section 841(d)(2), and Title 18, United States Code, Section

2.

All in violation of Title 21, United States Code, Section 841(d)(2).

## COUNT THIRTEEN

On or about May 19, 2000, in Osceola County, Florida, in the Middle District of Florida,

### HESHAM KHALED NABUT

the defendant herein, did knowingly and intentionally possess a quantity of pseudoephedrine, a listed chemical, knowing or having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, in violation of Title 21, United States Code, Section 841(d)(2), and Title 18, United States Code, Section 2.

All in violation of Title 21, United States Code, Section 841(d)(2).

## COUNT FOURTEEN

On or about June 1, 2000, in Orange County, Florida, in the Middle District of Florida,

### LAHCEN OUHARDA
a/k/a Lahcen Mike Ouharda
a/k/a "Hasan"
### NABIL ABDEL-RAOO MASWADEH
a/k/a Nabil Maswadeh
a/k/a "Hythem"
and
### AYDAR M. SAFIN
a/k/a Jim Edwards

the defendants herein, did knowingly and intentionally possess a quantity of pseudoephedrine, a listed chemical, knowing or having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, in violation of Title 21, United States Code, Section 841(d)(2), and Title 18, United States Code, Section 2.

11

All in violation of Title 21, United States Code, Section 841(d)(2).

## COUNT FIFTEEN

On or about June 5, 2000, in Seminole County, Florida, in the Middle District of Florida,

### SABIH SALEH HACK
### a/k/a "Sheik"
### a/k/a "Angel"

the defendant herein, did knowingly and intentionally distribute a quantity of pseudoephedrine, a listed chemical, knowing or having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, in violation of Title 21, United States Code, Section 841(d)(2), and Title 18, United States Code, Section 2.

All in violation of Title 21, United States Code, Section 841(d)(2).

## COUNT SIXTEEN

On or about June 9, 2000, in Osceola County, Florida, in the Middle District of Florida,

### HESHAM KHALED NABUT

the defendant herein, did knowingly and intentionally possess a quantity of pseudoephedrine, a listed chemical, knowing or having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, in violation of Title 21, United States Code, Section 841(d)(2), and Title 18, United States Code, Section 2.

All in violation of Title 21, United States Code, Section 841(d)(2).

## COUNT SEVENTEEN

On or about June 20, 2000, in Seminole County, Florida, in the Middle District of

Florida,

**MOHAMMED AWNI HABBAS**
a/k/a "Habbas"
a/k/a "Mike"
**SABIH SALEH HACK**
a/k/a "Sheik"
a/k/a "Angel"
**and**
**RICKY DEAN OSBAN**
a/k/a "Rick"

the defendants herein, did knowingly and intentionally possess a quantity of

pseudoephedrine, a listed chemical, knowing or having reasonable cause to believe that

the listed chemical would be used to manufacture a controlled substance, in violation of

Title 21, United States Code, Section 841(d)(2), and Title 18, United States Code, Section

2.

All in violation of Title 21, United States Code, Section 841(d)(2).

## COUNT EIGHTEEN

On or about June 27, 2000, in Orange County, Florida, in the Middle District of

Florida,

**MOHAMMED AWNI HABBAS**
a/k/a "Habbas"
a/k/a "Mike"
**and**
**SAMUEL M. EID**
a/k/a "Sammy"
a/k/a Said Eid

the defendants herein, did knowingly and intentionally attempt to possess a quantity of

pseudoephedrine, a listed chemical, knowing or having reasonable cause to believe that

13

the listed chemical would be used to manufacture a controlled substance, in violation of Title 21, United States Code, Section 841(d)(2), and Title 18, United States Code, Section 2.

All in violation of Title 21, United States Code, Section 841(d)(2).

## FORFEITURES

1.    The allegations contained in Counts One through Eighteen of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures, pursuant to the provisions of Title 21, United States Code, Section 853.

2.    From their engagement in the violations alleged in Counts One through Eighteen of this Indictment, each punishable by imprisonment for more than one year, the defendants,

MOHAMMED AWNI HABBAS
a/k/a "Habbas"
a/k/a "Mike"
TAREK ZAKI ABU-LAWI
MUTASEM ALSALHI
a/k/a "Maldini"
HESHAM KHALED NABUT
JIHAD MOHOMMED SALEM
a/k/a Joe Salem
KHALID SULIMAN ABU-LAWI
MUSTAFA ABU-LAWI
GAREEB KHALIL SALEM
SABIH SALEH HACK
a/k/a "Sheik"
a/k/a "Angel"
MOHAMMED ABED-UL-RAHMAN AWAWDEH
a/k/a Mohammed Awawdeh
ISSA A. AYESH
LAHCEN OUHARDA
a/k/a Lahcen Mike Ouharda
a/k/a "Hasan"

NABIL ABDEL-RAOO MASWADEH
a/k/a Nabil Maswadeh
a/k/a "Hythem"
AYDAR M. SAFIN
a/k/a Jim Edwards
MOHAMMAD TAHA
ZIAD IBRIHIM NOBANI
a/k/a "Mike"
a/k/a Ziad Alnobani
KHALED AL-HABAHBIH
RICKY DEAN OSBAN
a/k/a "Rick"
CARLOS LNU
SAMUEL M. EID
a/k/a "Sammy"
a/k/a Said Eid
GABRIEL LNU
a/k/a "Chago"
PATRICIA JOSEFINA VALENCIA-HERNANDEZ
a/k/a "Tricia"
JOSE GAUDALUPE TRUJILLO-CARDENAS
a/k/a "Lupillo"
and
NAPOLEON REYES-GUZMAN
a/k/a Jesus C. Sanchez
a/k/a Juan C. Sanchez

shall each forfeit to the United States, pursuant to Title 21, United States Code, Sections 853(a)(1) and (2), all of their interest in:

      a.    Property constituting and derived from any proceeds the defendants obtained, directly or indirectly, as a result of such violations;

      b.    Property used and intended to be used in any manner or part to commit and to facilitate the commission of such violations.

      3.    If any of the property described above, as a result of any act or omission of the defendants:

      a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

A TRUE BILL,

_Foreperson_

DONNA A. BUCELLA
United States Attorney

By: _____
Paul G. Byron
Assistant United States Attorney

By: _____
Thomas W. Turner
Acting Managing Assistant U.S. Attorney

FORM OBD-34
APR 1991

No. _____

# UNITED STATES DISTRICT COURT
Middle District of Florida
Orlando Division

### THE UNITED STATES OF AMERICA

vs.

MOHAMMED AWNI HABBAS, a/k/a "Habbas", a/k/a "Mike", TAREK ZAKI ABU-LAWI, MUTASEM ALSALHI, a/k/a "Maldini", HESHAM KHALED NABUT, JIHAD MOHAMMED SALEM, a/k/a Joe Salem, KHALID SULIMAN ABU-LAWI, MUSTAFA ABU-LAWI, GAREEB KHALIL SALEM, SABIH SALEH HACK, a/k/a "Sheik", a/k/a "Angel", MOHAMMED ABED-UL-RAHMAN AWAWDEH, a/k/a Mohammed Awawdeh, ISSA A. AYESH, LAHCEN OUHARDA, a/k/a Lahcen Mike Ouharda, a/k/a "Hasan", NABIL ABDEL-RAOO MASWADEH, a/k/a Nabil Maswadeh, a/k/a "Hythem", AYDAR M. SAFIN, a/k/a Jim Edwards, MOHAMMAD TAHA, ZIAD IBRIHIM NOBANI, a/k/a "Mike", a/k/a Ziad Alnobani, KHALED AL-HABABIH, RICKY DEAN OSBAN, a/k/a "Rick", CARLOS LNU, SAMUEL M. EID, a/k/a "Sammy", a/k/a Said Eid, GABRIEL LNU, a/k/a "Chago", PATRICIA JOSEFINA VALENCIA-HERNANDEZ, a/k/a "Tricia", JOSE GUADALUPE TRUJILLO-CARDENAS, a/k/a "lupito" and NAPOLEON REYES-GUZMAN, a/k/a Jesus C. Sanchez, a/k/a Juan C. Sanchez

## INDICTMENT

Violations:   21 U.S.C. § 846
21 U.S.C. § 841(d)\(2)

A true bill,

_Bias Algous_
Foreperson

Filed in open court this _22nd_ day

of August, A.D. 2000.

_____

_K. Weems_
Clerk

Bail $ _____

LMB/lmb

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. **00-6211** CR-HURLEY

21 U.S.C. § 841(d)(2)
21 U.S.C. § 846
21 U.S.C. § 853
18 U.S.C. § 2

MAGISTRATE JUDGE
VITUNAC

UNITED STATES OF AMERICA        )
                                )
                Plaintiff,      )
                                )
v.                              )
                                )
THOMAS L. NAROG,                )
GHANDI JABER,                   )
AHMAD ALMASRI,                  )
NADIA ALMASRI,                  )
MUTASEM AL-SALHI, HGARING       )
SABER ABDELMUTI,                )
RAED NASER ALDIN,               )
NABIL AQUIL,                    )
NIZAR FNEICHE,                  )
MOTLAQ JABER,                   )
TEREK ZAKI ABU-LAWI,            )
RABAH EL HADDAD,                )
ZUHAIR MAHUMUD RABEI,           )
and                             )
MOHAMMED SAMHAN,                )
                                )
                Defendants.     )
_____)

FILED by _____ D.C.

AUG - 1 2000

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

## INDICTMENT

The Grand Jury charges that:

### COUNT 1

From in or about September 1999, the exact date being unknown to the Grand Jury, to the present, in Broward County, in the Southern District of Florida, and elsewhere, the defendants,

THOMAS L. NAROG,
GHANDI JABER,
AHMAD ALMASRI,
NADIA ALMASRI,
MUTASEM AL-SALHI,
SABER ABDELMUTI,
RAED NASER ALDIN,
NABIL AQUIL,
NIZAR FNEICHE,
MOTLAQ JABER,
TEREK ZAKI ABU-LAWI,
RABAH EL HADDAD,
ZUHAIR MAHUMUD RABEI,
and
MOHAMMED SAMHAN,

did knowingly and intentionally combine, conspire, confederate and agree with each other and with persons known and unknown to the Grand Jury, to possess and distribute pseudoephedrine, a list I chemical as defined in Title 21, United States Code, Section 802, knowing and having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, that is, methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(d)(2); all in violation of Title 21, United States Code, Section 846.

## COUNT 2

On or about March 27, 2000, at Broward County, in the Southern District of Florida, and elsewhere, the defendants,

THOMAS L. NAROG,
GHANDI JABER,
MUTASEM AL-SALHI,
MOTLAQ JABER,
and
TEREK ZAKI ABU-LAWI,

did knowingly and intentionally possess and distribute

2

pseudoephedrine, a list I chemical as defined in Title 21, United States Code, Section 802, knowing and having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, that is, methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(d)(2), and Title 18, United States Code, Section 2.

## COUNT 3

On or about April 4, 2000, at Broward County, in the Southern District of Florida, and elsewhere, the defendants,

THOMAS L. NAROG,
GHANDI JABER,
MOTLAQ JABER,
and
MUTASEM AL-SALHI,

did knowingly and intentionally possess and distribute pseudoephedrine, a list I chemical as defined in Title 21, United States Code, Section 802, knowing and having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, that is, methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(d)(2), and Title 18, United States Code, Section 2.

3

## COUNT 4

On or about April 27, 2000, at Broward County, in the
Southern District of Florida, and elsewhere, the defendants,

THOMAS L. NAROG,
GHANDI JABER,
AHMAD ALMASRI,
NADIA ALMASRI,
SABER ABDELMUTI,
and
ZUHAIR MAHUMUD RABEI,

did knowingly and intentionally possess and distribute
pseudoephedrine, a list I chemical as defined in Title 21, United
States Code, Section 802, knowing and having reasonable cause to
believe that the listed chemical would be used to manufacture a
controlled substance, that is, methamphetamine, a Schedule II
controlled substance, in violation of Title 21, United States
Code, Section 841(d)(2), and Title 18, United States Code,
Section 2.

## COUNT 5

On or about June 1, 2000, at Broward County, in the
Southern District of Florida, and elsewhere, the defendants,

THOMAS L. NAROG,
GHANDI JABER,
MOTLAQ JABER,
RAED NASER ALDIN,
NABIL AQUIL,
NIZAR FNEICHE,
RABAH EL HADDAD,
and
MOHAMMAD SAMHAN

did knowingly and intentionally possess and distribute

4

pseudoephedrine, a list I chemical as defined in Title 21, United

States Code, Section 802, knowing and having reasonable cause to

believe that the listed chemical would be used to manufacture a

controlled substance, that is, methamphetamine, a Schedule II

controlled substance, in violation of Title 21, United States

Code, Section 841(d)(2), and Title 18, United States Code,

Section 2.

## COUNT 6

On or about June 15, 2000, at Broward County, in the

Southern District of Florida, and elsewhere, the defendants,

THOMAS L. NAROG,
RABAH EL HADDAD,
and
MOHAMMAD SAMHAN

did knowingly and intentionally possess and distribute

pseudoephedrine, a list I chemical as defined in Title 21, United

States Code, Section 802, knowing and having reasonable cause to

believe that the listed chemical would be used to manufacture a

controlled substance, that is, methamphetamine, a Schedule II

controlled substance, in violation of Title 21, United States

Code, Section 841(d)(2), and Title 18, United States Code,

Section 2.

## COUNT 7

On or about June 20, 2000, at Broward County, in the
Southern District of Florida, and elsewhere, the defendant,

THOMAS L. NAROG,

did knowingly and intentionally possess and distribute
pseudoephedrine, a list I chemical as defined in Title 21, United
States Code, Section 802, knowing and having reasonable cause to
believe that the listed chemical would be used to manufacture a
controlled substance, that is, methamphetamine, a Schedule II
controlled substance, in violation of Title 21, United States
Code, Section 841(d)(2), and Title 18, United States Code,
Section 2.

6

## FORFEITURE
### (21 U.S.C. §853)

As a result of the foregoing offenses listed in Counts

1,2,3,4,5,6,and 7, of the indictment, the defendants,

THOMAS L. NAROG,
GHANDI JABER,
AHMAD ALMASRI,
NADIA ALMASRI,
MUTASEM AL-SALHI,
SABER ABDELMUTI,
RAED NASER ALDIN,
NABIL AQUIL,
NIZAR FNEICHE,
MOTLAQ JABER,
TEREK ZAKI ABU-LAWI,
RABAH EL HADDAD,
ZUHAIR MAHUMUD RABEI,
and
MOHAMMED SAMHAN,

shall forfeit to the United States, any and all property used or

intended to be used in any manner or part to commit and to

facilitate the commission of the foregoing offenses; and any and

all property constituting and derived from proceeds the defendant

obtained directly or indirectly, as a result of such violations,

including, but not limited to:

1. the single family residence located at
   8 Castle Harbor Isle, Fort Lauderdale, Florida;

2. one 1996 White Mercedes four-door automobile;

3. 118 boxes, containing 144 bottles per box, of 60mg, 60
   count "Tru-Choice Maximum" pseudoephedrine pills, and
   31 boxes of loose 60 mg "Tru-Choice Maximum"
   pseudoephedrine pills packaged in clear ziplock baggies

pursuant to Title 21, United States Code, Sections 841(a)(1), 846, and 853.

If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

1.     cannot be located upon the exercise of due diligence;

2.     has been transferred or sold to, or deposited with, a third person;

3.     has been placed beyond the jurisdiction of the Court;

4.     has been substantially diminished in value; or

5.     has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United State Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property, pursuant to Title 21, United States Code, Section 853.

A TRUE BILL

FOREPERSON

GUY A. LEWIS
UNITED STATES ATTORNEY

LAURENCE M. BARDFELD
ASSISTANT UNITED STATES ATTORNEY

Certified to be a true and
correct copy of the document on file
Clarence Maddox, Clerk,
U.S. District Court
Southern District of Florida

Deputy Clerk

8-1-00

8

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:00-cr-136-Orl-31B

MUTASEM ALSALHI

## PLEA AGREEMENT

### A.    Particularized Terms

Pursuant to Fed. R. Crim. P. 11(e), the United States of America, by Donna A.
Bucella. United States Attorney for the Middle District of Florida, and the defendant,
MUTASEM ALSALHI, and the attorney for the defendant, Mark NeJame, mutually
agree as follows:

### 1.    Counts Pleading To

The defendant shall enter a plea of guilty to Counts One and Two of the
Superseding Indictment at Docket No. 187.   Count One charges the defendant with
conspiring to possess with the intent to distribute in excess of 50 grams of
methamphetamine, in violation of 21 U.S.C. § 846.  Count Two charges the defendant
with conspiring to possess and distribute a quantity of pseudoephedrine knowing or
having reasonable cause to believe that the listed chemical would be used to
manufacture a controlled substance, in violation of 21 U.S.C. § 841(d)(2).

Defendant's Initials _M_                                    MAUSA Approval _____
                                                            AF Approval _____

## 2.  **Maximum Penalties**

Count One carries a mandatory minimum sentence of ten years imprisonment and a maximum sentence of life imprisonment, a fine of up to $4,000,000, a term of supervised release of at least five years, and a special assessment of $100 per felony count, said special assessment to be due on the date of sentencing.  Count Two carries a maximum sentence of twenty years, a fine of up to $250,000, a term of supervised release of at least three years, and a special assessment of $100 per felony count, said special assessment to be due on the date of sentencing.

## 3.  **Elements of the Offenses**

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

**First:**      That the defendant knowingly, intentionally, and willfully conspired or agreed with at least one other person to possess with the intent to distribute a controlled substance; and

**Second:**   That methamphetamine is a controlled substance listed in Schedule I of Title 21, United States Code, Section 812.

The elements of Count Two are:

**First:**      That the defendant knowingly, intentionally, and willfully conspired or agreed with at least one other person to possess and distribute a listed chemical; and

Defendant's Initials _M_                                        MAUSA Approval _Zhu_

2

**Second:** That the defendant did so knowing or having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance.

### 4. Counts Dismissed

At the time of sentencing, the Indictment previously filed at Docket No. 97, against the defendant will be dismissed pursuant to Fed. R. Crim. P. 11(e)(1)(A).

### 5. Counts Dismissed

At the time of sentencing, the remaining counts in the Superseding Indictment against the defendant, to wit: Counts Eleven and Twelve, will be dismissed pursuant to Fed. R. Crim. P. 11(e)(1)(A).

### 6. No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

### 7. Base Offense Level

Pursuant to Fed. R. Crim. P. 11(e)(1)(B), the United States will recommend to the Court that the defendant's base offense level be calculated at 38 pursuant to USSG §2D1.1(c)(1). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Defendant's Initials _M_

3

MAUSA Approval _Zz_

8. **Acceptance of Responsibility**

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1.   The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

9. **Low End**

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court.  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

10. **Safety Valve Provision**

The United States will recommend to the Court that it impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, pursuant to USSG §5C1.2, if the Court finds that the defendant meets the criteria set forth in 18 U.S.C. § 3553(f).   The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Defendant's Initials _M_                    4                    MAUSA Approval _Mc_

11.    **Cooperation - Substantial Assistance to be Considered**

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle

Defendant's Initials ___M___                    MAUSA Approval _____

District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

**12.    Use of Information - Section 1B1.8**

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

**13.    Cooperation - Responsibilities of Parties**

a.    The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.    It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

Defendant's Initials _M_

6

MAUSA Approval _Zm_

(1)    The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)    The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)    The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this

Defendant's Initials _M_                                   MAUSA Approval _____

7

agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)    The government may use against the defendant its own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)    The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

**14.    Forfeiture of Assets**

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 21 U.S.C. §853, which are in the possession or control of the defendant or defendant's nominees.  The defendant admits and agrees that the conduct giving rise to the Superseding Indictment in this case provides a sufficient factual and statutory basis for the forfeiture of real and/or personal property sought by the government.  The assets to be forfeited include, but are not limited to, cash, stocks, bonds, certificates of deposit, personal property, and real estate.

Defendant's Initials _/M/_                8                MAUSA Approval _Zup_

The defendant further agrees to fully assist the government in the recovery and return to the United States any assets or portions thereof as described above wherever located. The defendant further agrees to make a full and complete disclosure of all assets over which defendant exercises control and those which are held or controlled by a nominee. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees to forfeit all interests in the properties as described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers. The defendant agrees and consents to the forfeiture of assets pursuant to any criminal, civil, and/or administrative forfeiture action brought to forfeit these properties. Defendant agrees to take all steps necessary to locate property and to pass title to the United States before the defendant's sentencing. The defendant hereby waives any double jeopardy challenges that the defendant may have as to any forfeiture actions arising out of the course of conduct that provides the factual basis for the Superseding Indictment in this case. The defendant hereby waives any double jeopardy challenges that the defendant may have to the charges in this Superseding Indictment based upon any forfeiture actions. The defendant hereby waives any constitutional claims that the defendant may have that the forfeiture of the aforementioned assets constitutes an excessive fine.

Defendant's Initials _M_                    MAUSA Approval _____

9

The defendant agrees that the United States is not limited to forfeiture of the property described above. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. This Court shall retain jurisdiction to settle any disputes arising from application of this clause. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence. Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

**B.    Standard Terms and Conditions**

**1.    Special Assessment and Fine**

On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Court, and due on date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

Defendant's Initials _M_    10    MAUSA Approval _Zw_

2.    **Supervised Release**

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    **Sentencing Information**

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(b)(4)(A), the defendant agrees to complete and submit, upon execution of this plea agreement, an affidavit reflecting the defendant's financial condition. The defendant further agrees, and by the execution of this plea agreement, authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office or any victim named in an order of restitution, or any other source, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations

Defendant's Initials _M_

MAUSA Approval _____

to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.

### 4.    Sentencing Guidelines and Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence and the sentencing guidelines, if any, applicable to defendant's case will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant understands that the Court is required to consider any applicable sentencing guidelines but may depart from these guidelines under some circumstances.  Defendant acknowledges that defendant and defendant's attorney have discussed the sentencing guidelines and defendant understands how the guidelines are applicable to defendant's case.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding the potential application of the sentencing guidelines to defendant's case and any recommendations by the government are not binding on the United States Probation Office or the Court and that, should any recommendations be rejected, and regardless of the guidelines calculated by the Probation Office or the Court, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves

Defendant's Initials _M_                                    MAUSA Approval _ZvV2_

12

the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

### 5.     Appeal of Sentence; Waiver

The defendant understands and acknowledges that defendant's sentence will be determined and imposed in conformance with the Comprehensive Crime Control Act of 1984 and the federal sentencing guidelines.  Defendant is also aware that a sentence imposed under the sentencing guidelines does not provide for parole. Knowing these facts, the defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum set forth for the offense and pursuant to the sentencing guidelines and expressly waives the right to appeal defendant's sentence, directly or collaterally, on any ground except for an upward departure by the sentencing judge, a sentence above the statutory maximum, a sentence in violation of the law apart from the sentencing guidelines, or the applicability of the "safety valve" provisions of 18 U.S.C. § 3553(f) and USSG §5C1.2; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

Defendant's Initials 

13

MAUSA Approval

6.    **Middle District of Florida Agreement**

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

7.    **Filing of Agreement**

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

8.    **Voluntariness**

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine

Defendant's Initials _____/M

14

MAUSA Approval _____

the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

9.    **Factual Basis**

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those facts beyond a reasonable doubt:

**FACTS**

The factual statement in this plea agreement does not attempt to set forth all facts known to the government concerning the roles of all indicted co-conspirators. Rather, the statement of facts is limited to those facts necessary to support the entry of a plea by this defendant.

Defendant's Initials _____

MAUSA Approval _____

15

## Introduction:

An investigation conducted by law enforcement personnel throughout the United States has identified that a structured network of individuals, international in scope, is involved in providing pseudoephedrine to various methamphetamine trafficking organizations in the United States.  Pseudoephedrine, an over-the-counter nasal decongestant product, is also used as a precursor chemical to manufacture methamphetamine. There are a number of chemicals and materials that are used in the manufacturing of methamphetamine.  Among the ingredients used are ephedrine and pseudoephedrine, red phosphorous, hydriodic acid, iodine, sodium hydroxide, Freon, and hydrogen chloride gas.

The need for precursor chemicals has resulted in the development of entire organizations dedicated to procuring and illegally diverting one specific chemical to be used in the manufacturing of methamphetamine.  Such an organization has been identified in this investigation, with criminal operations in many states, including Florida, California, New York, New Jersey, Texas, Oregon, Washington, Nevada, Michigan, Illinois, Ohio, and North Carolina.

The methamphetamine laboratory production process generally is completed in three or four distinct stages.  Stage one is referred to as the tablet extraction stage where ephedrine is extracted from tablets of pseudoephedrine hydrochloride using denatured alcohol or some other chemical solvent.  Stage two is referred to as the cooking stage where the chemical substances are processed to form an acidic mixture. Stage three is referred to as the base conversion stage where the mixture of

Defendant's Initials _M_                              MAUSA Approval _____

substances is converted from an acidic mixture to a base mixture. Stage four is referred to as the salting or crystallization stage where the d-methamphetamine oil is converted to a brown or white in color crystalline powder. Using efficient laboratory procedures, one case of pseudoephedrine which generally consists of 144 boxes of 60-count/ 60-mg tablets (8,640 dosage units) after extraction will yield approximately one pound of methamphetamine of 70% purity. The theoretical yield for the reduction of ephedrine hydrochloride (HCl) or pseudoephedrine HCl to methamphetamine HCl is 0.92. This means that one kilogram of pseudoephedrine HCl would theoretically produce 0.920 kilograms (920 grams) of methamphetamine HCl, assuming all other necessary chemicals are available and the reaction goes to completion. The actual yield depends on several factors, mainly the method of processing and the skill of the clandestine laboratory operator. Of critical importance is the purification step and the solvent(s) used in the crystallization of methamphetamine HCl. Typical overall yields for the reduction of pseudoephedrine HCl to methamphetamine HCl in clandestine laboratories ranges from 50% to 75%. The methamphetamine HCl produced typically contains little or no unreacted precursor (ephedrine or pseudoephedrine) and is generally greater than 90% pure.

Ephedrine or pseudoephedrine is the single most important precursor chemical used in the most common method of methamphetamine production. Ephedrine and pseudoephedrine can be used interchangeably as precursors in the synthesis of methamphetamine. This is supported by scientific literature and in laboratory work performed by the Drug Enforcement Administration. Pseudoephedrine

Defendant's Initials _M_

MAUSA Approval _Zm_

is designated as a List I Chemical by 21 CFR 1310.02[a] and is defined in Title 21,

USC, Section 802(34)(K). A List I Chemical is a chemical specifically used, in addition

to legitimate uses, in the manufacturing of a controlled substance in violation of the

Controlled Substances Act and is important to the manufacture of controlled

substances. Pseudoephedrine is not generally available in powder form, it is typically

contained in tablets such as Sudafed or Actifed which are common over-the-counter

cold medications. The acquisition of quantities necessary to make even small amounts

of methamphetamine is difficult due to limitations on the retail sale of pseudoephedrine.

Pseudoephedrine manufactured for cold medication is sold in blister

packs that are generally 30 milligrams per tablet. The "rogue" wholesale distributors of

pseudoephedrine generally sell bottles that contain 60 to 120 tablets, 60 milligrams per

tablet. Bottled pseudoephedrine is more appealing to the methamphetamine

manufacturing organizations for two reasons: bottles contain more tablets than blister

packs and tablets are more easily removed from their container. Extraction labs have

been created for the purpose of converting pseudoephedrine tablets into bulk

pseudoephedrine powder by combining large amounts of ground up tablets with a

solvent that separates the pseudoephedrine from binding material and additives also

contained in the tablets. The pseudoephedrine is then taken to a methamphetamine

synthesis laboratory where it is combined with red phosphorous, hydriodic acid, ice,

sodium hydroxide (commonly acquired as "Red Devil" lye), Freon, hydrogen chloride

gas and other chemicals. Therefore, organizations that have formed to procure and

Defendant's Initials _AA_                    18                    MAUSA Approval _____

illegally divert pseudoephedrine are critically important to the criminal organizations that actually distribute the finished product, methamphetamine.

The focus of the present investigation is the acquisition of pseudoephedrine, a List 1 chemical, by individuals mostly of Arabic Nationality and the diversion or illegal trafficking of the pseudoephedrine to individuals mostly of Mexican Nationality for the purpose of manufacturing methamphetamine. This investigation has established that persons in the greater Orlando metropolitan area and elsewhere are involved in the acquisition of pseudoephedrine through the use of businesses (i.e. gift shops or supermarkets) that are being utilized as "fronts" for the criminal activity being pursued. For the duration of this criminal conspiracy, members of this criminal enterprise have consistently shipped bulk quantities of pseudoephedrine from Florida to locations primarily in California. for the purpose of distributing the pseudoephedrine to Mexican Nationals involved in the clandestine manufacturing of methamphetamine. Many of these pseudoephedrine shipments have originated or taken place in the Middle District of Florida.

### The role of MUTASEM ALSALHI:

The defendant, MUTASEM ALSALHI, furthered the goals of the conspiracy by acquiring bulk quantities of pseudoephedrine and shipping the chemical to methamphetamine manufacturers in California. Specifically, on March 27, 2000, agents conducted surveillance at SEASIDE PHARMACEUTICAL in Fort Lauderdale, FL. During this surveillance, agents observed defendant Tarek Abu-Lawi and unindicted co-conspirator Ghandi JABER arrive together and meet with unindicted co-conspirator

Defendant's Initials _M_                                    MAUSA Approval _____

Tom Narog.  All three individuals then loaded approximately 1,000 gross pounds of TRU CHOICE brand pseudoephedrine into a U-Haul rental truck.  Tarek Abu-Lawi and others later transferred this pseudoephedrine into a storage locker in Delray Beach, Florida.  The following morning, agents observed MUTASEM ALSALHI and an unknown male remove the pseudoephedrine in a U-Haul rental truck and then travel northbound on Interstate 95 from Broward County, Florida.

On March 28, 2000, agents continued surveillance and observed the U-Haul and a Blazer travel to Orlando, Florida.  MUTASEM ALSALHI had previously rented the Blazer, at National Car Rental. Both vehicles traveled together, and MUTASEM ALSALHI switched vehicles with the unknown male and departed the area in the U-Haul, which had previously been loaded with a large quantity of pseudoephedrine.  Agents continuously followed the U-Haul containing pseudoephedrine.  MUTASEM ALSALHI drove the U-Haul to FORWARD AIR, INC., 9463 Benford Road, Orlando, FL.  MUTASEM ALSALHI completed the shipping of 1000 pounds (gross weight) of pseudoephedrine which was placed on two pallets.  The FORWARD AIR shipping bill reflects the shipper as ALNJEED DIS, with a shipping address of Columbus, Ohio.  The pseudoephedrine was shipped to ALNJEEB DIS in Los Angeles, California.  The FORWARD AIR shipping invoice reflects the contents of the shipment as "F.A.K. grossery supplies". ALSALHI paid for the shipment using a money order.

SA Kelly Pennington, acting in an undercover capacity, posed as an employee of the FORWARD AIR freight company and drove ALSALHI to return the U-Haul at a rental center located at 7726 Orange Blossom Trail, Orlando, Florida.  ALSALHI was

Defendant's Initials ___M___

20

MAUSA Approval _____

manufacture of methamphetamine. During the course of the conspiracy, the defendant diverted in excess of 20 kilograms of pseudoephedrine, and diverted quantities of the chemical sufficient to manufacture in excess of fifteen kilograms of methamphetamine.

**10.    Entire Agreement**

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

**11.    Certification**

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _3 1_ day of October, 2000.

DONNA A. BUCELLA
United States Attorney

_Mushasem alsalhi_    By: _____

Mustaem Alsalhi                    Paul G. Byron
Defendant                          Assistant United States Attorney

_____            _____
Mark NeJame                        Thomas W. Turner
Attorney for Defendant             Managing Assistant U.S. Attorney

Defendant's Initials _M_                    22                    MAUSA Approval _____